IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRIGGS BROTHERS ENTERPRISES CORPORATION**<br>4749 Sansom St<br>Philadelphia, PA 19139<br><br>**Plaintiff**<br><br>v.<br><br>**RLI INSURANCE COMPANY**<br>9025 N. Lindbergh Dr.<br>Peoria, IL<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No._____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Briggs Brothers Enterprises Corporation ("BBEC"), plaintiff herein, by and through undersigned counsel, for its complaint alleges as follows.

### I.  INTRODUCTION

This is an action brought under diversity jurisdiction for BBEC to seek redress for defamatory and damaging statements made by RLI Insurance Company ("RLI"). BBEC is an SBA certified 8(a) minority-owned construction company that contracts with the United States Government. It has performed contracts for the Department of Defense, the Department of Transportation, and several other Federal agencies. RLI contacted several of these U.S. federal government agencies demanding that those agencies to withhold payments to BBEC due to claims on a completely unrelated commercial project in Texas. RLI followed these letters up with conversations with some government contracting officials stating that BBEC was unreliable

and potentially facing bankruptcy. These false statements harmed BBEC's reputation within the federal government and caused at least one of its federal contracts to be reduced and de-scoped.

## II. PARTIES, JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a).

2. Venue is proper in this court as RLI communicated with Federal Government officials in multiple states simultaneously, making this venue the most applicable. RLI's defamatory statements have impacted BBEC's reputation as a federal contractor with several federal agencies that are located in Washington, D.C.; such as the Department of Transportation and the Small Business Administration. Federal Contractors receive evaluations at the end of a contract performance; so to the extent that RLI's comments effect BBEC's evaluations, it will impact BBEC across all Federal Agencies.

3. BBEC is a Pennsylvania corporation with a primary office address of 4749 Sansom St, Philadelphia, PA.

4. Defendant RLI Insurance Company is a Delaware Corporation with a primary office address of 9025 N. Lindbergh Dr., Peoria, IL.

## III. FACTUAL ALLEGATIONS

### A. BBEC's Relationship with RLI

5. BBEC is a successful and trusted federal government contractor with experience in the construction industry, including experience performing earthwork and paving work.

6. BBEC was certified by the Small Business Administration as a socially and economically disadvantaged small business and admitted to the 8(a) Business Development Program.

7. BBEC regularly performs work on public works projects through Federal Government contracts, which often require BBEC to obtain payment and other bonds from a surety.

8. RLI, a surety authorized to issue payment and performance bonds for federal projects, issued performance and payment bonds for BBEC on several federal projects as well as several commercial projects.

9. RLI knew that BBEC was required to obtain these bonds to perform work on its projects.

10. BBEC expected and relied on RLI's judicious and expeditious handling of claims against any of these bonds and that RLI would timely reject invalid, improper, frivolous or fraudulent claims.

**B. Texas Bond Claims**

11. Instead, when RLI received dozens of facially invalid, improper, frivolous, or fraudulent claims against a bond issued for a Texas commercial project, it treated these claims as valid.

12. One of BBEC's subcontractors on a commercial project in Texas failed to pay its lower tier subcontractors. This led to a flurry of nonpayment claims, which continued even after BBEC terminated the offending subcontractor. As these claims came in, BBEC negotiated with the various vendors and regularly reached settlements with them.

13. Despite, or because of, BBEC's resolution with the initial, valid claimants, numerous other purported vendors and subcontractors filed dozens of facially invalid claims.

14. RLI failed to close or properly evaluate these claims due to its excessive incompetence and insufficient staff. For example, RLI received claims from vendors who

purportedly provided labor or materials to *one project*, but the supporting invoices identified *a different project*. RLI even received claims for projects on which BBEC never worked. RLI received a claim addressed to an entity with "Briggs" in its name, but which had no affiliation with BBEC. RLI received a claim from a vendor who claimed it supplied equipment since April 2020 for a project that did not commence until May 2021.

15.     Despite these facially flawed and invalid claims, RLI, which by its own admission was woefully understaffed, did nothing to investigate and review these claims. Instead, it treated each of these claims as valid.

16.     As a result, RLI contacted BBEC, expressed concerns over the number of claims – with no regard to the lack of merit of most of the claims – and demanded a meeting to review BBEC's financial books and records to reach a resolution on the Texas project.

17.     At this meeting, held on December 19, 2022, BBEC, through its Texas counsel, pointed out the numerous and apparent flaws in the majority of these claims. BBEC's Texas counsel explained how the Texas laws governing bond claims often lead to premature and invalid claims.

18.     Despite the facially flawed claims and this explanation, RLI continued to treat these all as valid claims and made numerous unreasonable demands on BBEC.

   C.  **RLI Defames BBEC and interferes with BBEC's contracts.**

19.     Instead of reviewing and assessing these invalid claims, RLI decided to contact all of BBEC's other customers, including four (4) government funded projects, stating that RLI had received claims on another project and ***demanding*** that each of these customers, including the Federal Government, stop paying BBEC.

20. RLI sent these letters without making any efforts to confirm the validity of the claims on the Texas project.

21. Without any warning or discussion with BBEC, RLI sent all of these letters on December 29, 2023. The letters sent to the federally funded projects are attached as Exhibit A.

22. Each of BBEC's customers had contractual obligations to pay BBEC. Certain laws and regulations require that the Federal Agencies pay BBEC.

23. RLI instructed all of these customers to breach their obligations to BBEC. It instructed federal contracting personnel to violate Government procurement regulations. As a result of these letters, BBEC was not paid under multiple commercial construction contracts. RLI issued these letters even though, up to that point, RLI had not paid a single penny under any of the bonds issued on BBEC projects.

24. One of BBEC's federal contracts is with the U.S. Army Corps of Engineers ("USACE") New Orleans Area Office. Under this contract, BBEC is making repairs to various flood control infrastructure.

25. Shortly after USACE received the letter from RLI, USACE descoped BBEC's contract and removed $2.1 million of work from this contract. BBEC believes that USACE made this decision due to RLI's defamatory statements and interference.

26. RLI personnel also spoke to multiple government contracting personnel making even more defamatory statements.

27. A Department of Defense contracting specialist called RLI on a general number to confirm that BBEC obtained the performance bond needed for a project at Charleston Air Force Base.

28. This contracting official was transferred to Mr. Ryan Issel, an RLI employee who drafted all of the letters to BBEC's customers.

29. Mr. Issel lied to this contracting official stating that his call was "randomly" routed to Mr. Issel. Mr. Issel then stated that BBEC had "failed" on a project in Texas, that BBEC had not paid numerous subcontractors, that BBEC was on the brink of bankruptcy and made other false statements regarding BBEC's capabilities and business ethics.

30. RLI personnel communicated similar information to contracting personnel from the Department of Transportation, which is located at 1200 New Jersey Avenue, S.E., Washington, D.C.

## IV. CLAIMS FOR RELIEF

### COUNT I
### Defamation Per Se

31. BBEC realleges and reincorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

32. RLI's letters to the government contracting officials falsely overstated the Texas claims making reference to "claims" under multiple "bonds."

33. RLI's letter also falsely implied that Briggs was either insolvent and / or untrustworthy.

34. RLI's statements to contracting officials that BBEC failed to pay subcontractors and failed to perform on a project in Texas were knowingly and recklessly false.

35. RLI knew that all of its statements were false and that these statements would harm BBEC's reputation and ability to perform its government contracts and win future government work.

36. RLI was reckless and negligent in making these statements as it never investigated the validity of the claim on the Texas project.

37. BBEC has been damaged by these statements as it had one contract descoped and has had its performance impacted on a Department of Transportation project.

## COUNT II
### Tortious Interference with a Contract

38. BBEC realleges and reincorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

39. BBEC has a valid, binding contract with the USACE for the performance of repairs to flood control infrastructure.

40. RLI knew that BBEC had this contract as RLI had issued a bond for this project.

41. RLI contacted USACE with false statements about BBEC's performance under the Texas project.

42. As a result of RLI's false statements, USACE descoped BBEC's contract by approximately $2.1 million.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

1. Enter judgment in favor of Plaintiff;

2. Award Plaintiff $500,000 in compensatory damages;

3. An award of appropriate punitive damages;

4. Award BBEC reasonable attorneys' fees and costs

5. Award any other relief this Court may deem just and proper.

        Respectfully submitted,

        <u>/s/ John A. Bonello</u>
        John A. Bonello (DCB# 434817)
        Lewis P. Rhodes (DCB# 984664)
        Reston Law Group LLP
        2100 Reston Parkway Suite 450
        Reston, VA 20191
        571-446-2846
        *Counsel for Plaintiff*